```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

BASSAM AWAD
     Plaintiff,


     v.                                   CIVIL ACTION NO.
                                          18-12022-MBB

JOHN CUTONE and
BUNKER HILL COMMUNITY COLLEGE,
     Defendants.
```

**MEMORANDUM AND ORDER RE:
DEFENDANTS' MOTION TO DISMISS
(DOCKET ENTRY # 34)**

**August 24, 2021**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to dismiss filed by defendants Bunker Hill Community College ("BHCC") and BHCC Professor John Cutone ("Professor Cutone"), in his official capacity, (collectively "defendants") under Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)") and Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)").  (Docket Entry # 34).  Plaintiff Bassam Awad ("plaintiff") opposes the motion and attaches a number of exhibits to the opposition.  (Docket Entry # 43).

PROCEDURAL BACKGROUND

As set forth in an amended complaint, plaintiff, a 48-year-old former student at BHCC, alleges that defendants violated Massachusetts General Laws chapter 151C ("chapter 151C") by discriminating against him based on his age, sexual orientation,

creed, race, national origin, and disability.  (Docket Entry # 9).  In seeking dismissal under Rule 12(b)(1), defendants argue that sovereign immunity under the Eleventh Amendment bars the chapter 151C claims in the amended complaint.  Under Rule 12(b)(6), defendants maintain the chapter 151C claims are deficient because plaintiff does not fall within the categories of individuals covered by the language of the statute as having a private right of action.  (Docket Entry # 35, p. 9).[1]

## STANDARD OF REVIEW

The standard of review for a Rule 12(b)(6) motion is well established.  To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief

---

[1]  Page numbers refer to the page number in the upper, right-hand corner of docketed filings.  In seeking dismissal, defendants address claims not raised in the amended complaint, including claims for discrimination alleged in the original complaint (Docket Entry # 1, p. 4) under statutes cited in the original complaint (Docket Entry # 1, p. 3).  (Docket Entry # 35, pp. 10-19).  The amended complaint, however, only states that plaintiff "was discriminated against by [BHCC], on the basis of Creed, National Origin, Age, Sex, Disability, Race, Color.  This is in violation of M.G.L. c. 151C."  (Docket Entry # 9, p. 2).  As the only statute cited in the amended complaint to support the allegations of discrimination, chapter 151C provides the basis for the causes of action.  See McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979) (plaintiff's pro se status does not require court "to conjure up unpled allegations").  The amended complaint is also limited to chapter 151C claims because this court screened the original complaint under 28 U.S.C. § 1915(e)(2)(B) ("section 1915(e)(2)(B)"), deemed it deficient, allowed plaintiff an opportunity to amend it, and stated, in no uncertain terms, that "the amended complaint will stand on its own" and "replace the original complaint."  (Docket Entry # 5).

that is plausible on its face" even if actual proof of the facts is improbable. Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007); Miller v. Town of Wenham, 833 F.3d 46, 51 (1st Cir. 2016). The "standard is 'not akin to a "probability requirement," but it'" requires "'more than a sheer possibility that a defendant has acted unlawfully.'" Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (citations omitted). "'[W]here a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"'" In re ARIAD Pharms., Inc. Sec. Litig., 842 F.3d 744, 756 (1st Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "[A]ll reasonable inferences" are drawn "in the pleader's favor." Sanders v. Phoenix Ins. Co., 843 F.3d 37, 42 (1st Cir. 2016). Legal conclusions are not considered. See Dixon v. Shamrock Fin. Corp., 522 F.3d 76, 79 (1st Cir. 2008).

In considering the Rule 12(b)(1) motion, this court credits plaintiff's well-pled factual allegations and draws all reasonable inferences in plaintiff's favor. Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (citing Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001)); Sanchez ex rel. D.R.-S. v. U.S., 671 F.3d 86, 92 (1st Cir. 2012) ("credit[ing] the plaintiff's well-pled factual allegations and draw[ing] all reasonable inferences in the plaintiff's favor"

3

under Rule 12(b)(1)).  This court may additionally "'consider whatever evidence has been submitted,'" including "'depositions and exhibits submitted.'"  Merlonghi, 620 F.3d at 54 (citation omitted).

## FACTUAL BACKGROUND

Plaintiff was a student at BHCC throughout the time period described in the amended complaint.  (Docket Entry # 9).  In the fall of 2015, he enrolled in Professor Cutone's semester-long Small Business Management course.  (Docket Entry # 9, p. 2, ¶ 3).  Plaintiff failed to submit assignments when the course began due to "personal and health issues."  (Docket Entry # 9, p. 2, ¶ 4).  As a result, "Professor Cutone asked [plaintiff] if [he] was going to drop the class."  (Docket Entry # 9, p. 2, ¶ 4).

"On or about September 27, 2015, [plaintiff's] fiancée suffered a severe injury," and required plaintiff's full-time care.  (Docket Entry # 9, p. 2, ¶ 5).  In early October 2015, plaintiff brought Professor Cutone a disability accommodation form which listed two testing accommodations: "Extended Time" and a "Lower Distraction Environment."  (Docket Entry # 9, p. 2, ¶ 6) (Docket Entry # 35-2).[2]  Professor Cutone's comments on the

---

[2] Defendants attach the accommodation form to their supporting memorandum.  (Docket Entry # 35-2).  In evaluating a Rule 12(b)(6) motion, this court may consider certain narrow categories of documents outside the complaint without converting

4

form state that plaintiff "missed 3 weeks of assignments" and "per the [syllabus, Professor Cutone does] not give make ups." (Docket Entry # 35-2).  The syllabus states that "[w]eekly assignments will be open and close on Wednesday Morning at 8:00 AM."  (Docket Entry # 35-1, p. 4).  It cautions students to "[t]ake the time to get a couple of weeks ahead of the schedule to avoid missing an assignment due to an unexpected illness or event" and that all of the "assignments are open on the first day of class."  (Docket Entry # 35-1, p. 6) (underlining omitted).[3]

---

the motion into one for summary judgment.  Ironshore Specialty Ins. Co. v. United States, 871 F.3d 131, 135 (1st Cir. 2017). These "'narrow exceptions'" include "'documents central to the plaintiff's claim'" and "'documents sufficiently referred to in the complaint.'"  Newman v. Lehman Bros. Holdings Inc., 901 F.3d 19, 25 (1st Cir. 2018) (citations omitted).  The amended complaint refers to the accommodation form, and the form falls under both exceptions.  The amended complaint also references the syllabus (Docket Entry # 9, p. 2, ¶ 6), which defendants attach to their memorandum (Docket Entry # 35-1).  The syllabus likewise falls under these two exceptions for purposes of the Rule 12(b)(6) motion.

[3]  The amended complaint states that the "syllabus says that [Professor Cutone] does" grant extensions for missed assignments.  (Docket Entry # 9, p. 2, ¶ 6).  The syllabus does not include this information.  (Docket Entry # 35-1).  Rather, it states that "[a]ll assignments that are not completed on the closing date will receive a grade of (0) zero."  (Docket Entry # 35-1, p. 8); see Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (noting, in context of addressing exhibits in support of motions to dismiss and those appended to complaint, that exhibit trumps contradictory allegations in complaint) (citations omitted).

5

"On or about October 15, 2015, there was a fire in the apartment" where plaintiff resided. (Docket Entry # 9, p. 3, ¶ 11). The fire destroyed plaintiff's books, notes, and computer. (Docket Entry # 9, p. 3, ¶ 11). It took plaintiff "several weeks" to obtain all of his "supplies again." (Docket Entry # 9, p. 3, ¶ 11). "On December 9, 2015, Professor Cutone graded two of [plaintiff's] essays," and plaintiff "received scores of 100 and 90." (Docket Entry # 9, p. 3, ¶ 14).

In an email dated Friday, December 11, 2015, Professor Cutone advised plaintiff he had missed various essays, quizzes, and blogs resulting in a "zero" for the missed assignments, as stated in the syllabus (Docket Entry # 35-1, p. 8). (Docket Entry # 43, p. 6, Ex. 1). The email states that Professor Cutone would give plaintiff a C- in the course if he scored 95% or higher on the final exam, but stipulated that plaintiff had to accept the offer "by Monday December 13th at noon."[4] (Docket Entry # 9, p. 3, ¶ 13) (Docket Entry # 43, p. 6, Ex. 1). The amended complaint notes that plaintiff "did not see the email until" after the offer's expiration. (Docket Entry # 9, p. 3, ¶ 13).

---

[4]  The amended complaint refers to the email, which plaintiff attaches to his opposition. This court may therefore consider the email in adjudicating the Rule 12(b)(6) motion without converting it to a summary judgment motion. See footnote two.

6

On December 16, 2015, Professor Cutone emailed plaintiff accusing him of plagiarizing the above-noted assignments graded on December 9, 2015, "for which [plaintiff] received [the] grades of 90 and 100." (Docket Entry # 9, p. 3, ¶ 14) (Docket Entry # 43, p. 52, Ex. 1).[5] According to the syllabus, "[t]he first occurrence [of plagiarism] earns an 'F' for the assignment. Upon the second occurrence the student will receive an 'F' for the course." (Docket Entry # 35-1, p. 4) (underlining omitted). Plaintiff was given a failing grade for the course. (Docket Entry # 9, p. 3, ¶ 16). The syllabus also "states that every effort will be made to accommodate students in [Professor Cutone's] class." (Docket Entry # 9, p. 3, ¶ 15) (Docket Entry # 35-1, p. 4).

"On or about February 29, 2016, [plaintiff] filed an Affirmative Action Discrimination Complaint with Respondent," specifically, the Affirmative Action Office at BHCC. (Docket Entry # 9, p. 3, ¶ 17) (Docket Entry # 43, pp. 11-12, 15, 65, Ex. 1). On or about March 9, 2016, plaintiff filed a similar complaint with the United States Department of Education Office for Civil Rights ("OCR") alleging discrimination based on sexual orientation, age, and disability. (Docket Entry # 43, pp. 12-16, 24, Ex. 1). BHCC investigated the matter and ultimately

---

[5] See footnote four.

7

found insufficient evidence to support a finding of discrimination.  (Docket Entry # 43, pp. 31-35, 170, Ex. 1).  In a July 6, 2016 letter, OCR advised plaintiff it would undertake an investigation into his disability allegation but determined that the sexual orientation and age discrimination allegations were not appropriate for investigation.  (Docket Entry # 43, p. 24, Ex. 1).  After investigating the matter, OCR found insufficient evidence to support the disability allegation.  (Docket Entry # 43, pp. 100-101, Ex. 4).  The amended complaint reflects that plaintiff also filed a complaint against BHCC and Professor Cutone with the Massachusetts Commission Against Discrimination ("MCAD").  (Docket Entry # 9, p. 2) (referencing "MCAD Docket Number 16BED01651").

## DISCUSSION

Defendants move to dismiss the complaint based on sovereign immunity under the Eleventh Amendment pursuant to Rule 12(b)(1).  (Docket Entry # 35, pp. 7-8).  Separately, they move to dismiss the chapter 151C claims under Rule 12(b)(6).  (Docket Entry # 35, p. 9).  They also seek a Rule 12(b)(6) dismissal on causes of action not raised in the amended complaint.[6]  (Docket Entry # 35, pp. 10-19).  Confining the discussion to the claims raised in the amended complaint, i.e., the chapter 151C claims,

---

[6]  See footnote one.

8

defendants are entitled to a Rule 12(b)(1) dismissal under the Eleventh Amendment and, assuming arguendo the absence of an Eleventh Amendment bar, a Rule 12(b)(6) dismissal of the chapter 151C claims.

I. Eleventh Amendment

Defendants submit that the Eleventh Amendment bars the chapter 151C claims against defendants because BHCC is "an 'arm' of the Commonwealth entitled to sovereign immunity from suit in federal court."  (Docket Entry # 35, p. 7).  In opposing the motion to dismiss, plaintiff does not respond to defendants' arguments concerning the Eleventh Amendment bar.[7]  (Docket Entry # 35, pp. 7-9).

Absent consent, the Eleventh Amendment bars a suit against "the State or one of its agencies or departments . . . regardless of the nature of the relief sought."  Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Poirier v. Mass. Dep't of Corr., 558 F.3d 92, 97 (1st Cir. 2009) ("States and their agencies are entitled to sovereign immunity

---

[7] Plaintiff's failure to address the Eleventh Amendment argument waives the issue.  See Curet-Velázquez v. ACEMLA de Puerto Rico, Inc., 656 F.3d 47, 54 (1st Cir. 2011).  Whereas this court addresses the merits, this court reserves the waiver as an alternative basis to reject the chapter 151C claims.  See Negron-Almeda v. Santiago, 528 F.3d 15, 26 (1st Cir. 2008) (stating "rule" that if party belatedly raises argument "in the district court but that court, *without reservation*, elects to decide it on the merits, the argument is deemed preserved for later appellate review") (emphasis added).

9

'regardless of the relief sought'"). "'[A] State's constitutional interest in immunity encompasses not merely whether it may be sued, but *where* it may be sued.'" Campbell v. Bristol Cmty. Coll., Civil Action No. 16-11232-FDS, 2017 WL 722572, at *2 (D. Mass. Feb. 23, 2017) (quoting Pennhurst, 465 U.S. at 99); accord Wolski v. Gardner Police Department, 411 F.Supp.3d 187, 192 (D. Mass. 2019) (quoting Pennhurst, 465 U.S. at 99). Although "a state can waive its immunity by clear declaration that it intends to submit itself to the jurisdiction of a federal court," Davidson v. Howe, 749 F.3d 21, 28 (1st Cir. 2014), "[t]he Commonwealth has not waived sovereign immunity for tort claims brought in federal court." Campbell, 2017 WL 722572, at *2 (citing Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003)). Whereas the "Massachusetts Tort Claims Act . . . provide[s] a limited waiver of the Commonwealth's sovereign immunity," see Mass. Gen. Laws ch. 258, § 2), "that waiver . . . does not apply to suits brought under the statute in federal court." Wolski v. Gardner Police Department, 411 F.Supp.3d 187, 193 (D. Mass. 2019) (citing Mass. Gen. Laws ch. 258, § 3). Accordingly, Massachusetts has not consented to suit in federal court for the chapter 151C claims. See Mass. Gen. Laws ch. 258, § 3; Campbell, 2017 WL 722572, at *2-3 (finding "Massachusetts has not consented to suit in federal court for the state law

claims pleaded in the complaint," including "intentional infliction of emotional distress" and "wrongful termination").

A state's sovereign immunity "'extends to any entity that is an "arm of the state."'" Campbell, 2017 WL 722572, at *2 (quoting Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 99 (1st Cir. 2002)). The same is true for the entity's employees acting in their official capacities. See Haidak v. Univ. of Mass.-Amherst, 933 F.3d 56, 76 (1st Cir. 2019); Davidson, 749 F.3d at 27 (Eleventh Amendment bars suit whether "named defendant is the state itself or . . . state official in her official capacity").

"[S]tate universities and colleges have been frequently permitted to invoke the state's sovereign immunity as a bar to litigation in federal court." Shocrylas v. Worcester State Coll., Civil Action No. 06-40278-FDS, 2007 WL 3332818 at *2 (D. Mass. Oct. 29, 2007); see Telfort v. Bunker Hill Cmty. Coll., No. 16-11842-GAO, 2017 WL 2837005, at *2 (D. Mass. June 30, 2017) ("'with respect to Massachusetts state universities and colleges, every court in this District presented with the issue has concluded or assumed without issue that the state university or college at issue was a state agency for purposes of the Eleventh Amendment'") (brackets and citation omitted). "[S]tate universities and colleges" include "community colleges." Telfort, 2017 WL 2837005, at *2 (collecting cases); see

11

Campbell, 2017 WL 722572, at *3 (finding that Bristol Community College, a "public community college established under Mass. Gen. Laws ch. 15A, § 5" is "'arm of the Commonwealth'" and "entitled to sovereign immunity") (citations omitted); Cichocki v. Mass. Bay. Cmty. Coll., 199 F. Supp. 3d 431, 438 (D. Mass. 2016) (finding it "undisputed" that Massachusetts Bay Community College was a "state entity" that could "assert Eleventh Amendment protection"). Adhering to the analysis in Telfort, 2017 WL 2837005, at *1-3, and Campbell, 2017 WL 722572, at *2-3, BHCC, "[a]s a public community college established under Mass. Gen. Laws ch. 15A, § 5," is an arm of the state "entitled to sovereign immunity under the Eleventh Amendment." Campbell, 2017 WL 722572, at *3. The immunity also extends to the claim against BHCC Professor Cutone in his official capacity. See Davidson, 749 F.3d at 27.

## II. Chapter 151C Claims

Defendants argue that "even if" the chapter 151C claims are "not barred by sovereign immunity" under the Eleventh Amendment, they are nevertheless subject to dismissal because plaintiff "does not belong to the category of persons with a right of action under the statute."[8]  (Docket Entry # 35, p. 9).

---

8   The Rule 12(b)(6) record is limited to the amended complaint and documents falling into certain narrow exceptions, as stated in footnotes two, four, and five.

12

Plaintiff's opposition does not address the argument.[9]  (Docket Entry # 43).

The amended complaint alleges that defendants discriminated against plaintiff in violation of chapter 151C when Professor Cutone: (1) "refused to accommodate" plaintiff's requests for an extension; (2) "accused [plaintiff] of plagiarizing two essays"; and (3) distributed "an F as [plaintiff's] final grade" in Professor Cutone's class.  (Docket Entry # 9, pp. 2-3, ¶¶ 6, 14, 16).  Liberally construing the amended complaint, it asserts that these actions discriminated against plaintiff, a "heterosexual male originally from Egypt" who "identif[ies] as Coptic" and was 48 years old at the time of the alleged discrimination, because: (1) Professor Cutone asked plaintiff if "[his] partner was male or female"; (2) he "made a comment in class that he had nothing against homosexuals and in fact, his son was gay"; (3) he "stated 'I like to be around young people'"; and (4) Professor Cutone "discussed religion in class" and "mentioned that he is a 'good Catholic.'"  (Docket Entry # 9, p. 2, ¶¶ 7-10).

Chapter 151C prohibits discrimination "because of race, religion, creed, color or national origin" by an "*educational institution*" against any "citizen seeking *admission* as students

---

[9]  See footnote seven.

to such institution."  Mass. Gen. Laws ch. 151C, § 2 (emphasis added).  The statute also prohibits such discrimination by a "*vocational training institution*" against "any person . . . *enrolled* as a student."  Mass. Gen. Laws ch. 151C, § 3 (emphasis added).  A "private right of action" under chapter 151C therefore "extends only to '[a]ny person seeking admission as a student to any educational institution'" or to a student enrolled "'in a vocational training institution.'"  Shervin v. Partners Healthcare Systems, Inc., Civil Action No. 10-106010-RWZ, 2010 WL 5185384, at *1 (D. Mass. Dec. 15, 2010) (quoting Mass. Gen. Laws ch. 151C, § 3).  Because plaintiff was not seeking admission into BHCC but, rather, was "enrolled in a Small Business Management class" and attending BHCC at the time of the alleged discrimination (Docket Entry # 9, p. 2, ¶¶ 2-3), the analysis reduces to whether BHCC is a "vocational training institution" within the meaning of chapter 151C, section three.  (Docket Entry # 9).

Chapter 151C defines a "vocational training institution" as "any educational institution the primary purpose of which is to offer technical, agricultural, business or trade courses . . . leading to employment in recognized trades or occupations."  Mass. Gen. Laws ch. 151C, § 1.  A college or state university, however, is an "educational institution" rather than a "vocational training institution."  See Shervin, 2010 WL

5185384, at *1; accord Thomas v. Salem State Univ., No. 11-10748-DJC, 2013 WL 3404331, at *8 (D. Mass. July 2, 2013) (state university was not vocational training institution but instead an educational institution); Mass. Gen. Laws ch. 151C, § 1. (defining "educational institutions" as including "colleges" and "universities").

BHCC is a public community college. See Telfort, 2017 WL 2837005, at *3. As such, BHCC is an educational institution. See Shervin, 2010 WL 5185384, at *1. Accordingly, even if the Eleventh Amendment does not bar the chapter 151C claims against defendants, plaintiff lacks a cause of action under chapter 151C because he was not seeking admission into BHCC at the relevant time, and BHCC is not a "vocational training institution" within the meaning of the statute. The chapter 151C claims against BCHH and Professor Cutone in his official capacity are therefore subject to dismissal.

III. Individual Capacity Claim against Professor Cutone

Turning to Professor Cutone's liability in his individual capacity, this court allowed plaintiff's motion to proceed in forma pauperis. (Docket Entry # 5). In "screening" the original complaint under section 1915(e)(2)(B) (Docket Entry # 5, p. 1, ¶ 1), this court found it insufficient and "subject to dismissal in its current form." (Docket Entry # 5, p. 2). Notably, this court allowed plaintiff an opportunity to amend

15

the complaint and instructed him to focus "on the legal claims against each defendant" and "the factual basis for such claims." (Docket Entry # 5, p. 2).  The Order forewarns plaintiff that the amended complaint "will be subject to further screening." (Docket Entry # 5, p. 2).

Having undertaken that further screening of the amended complaint, it "fails to state a claim on which relief can be granted," 28 U.S.C. § 1915(e)(2)(B), against Professor Cutone in his individual capacity under chapter 151C for the reasons stated in Roman numeral II.  See Tavares v. Rhode Island Superior Court, Civil Action No. 19-00291-WES, 2019 WL 2269225, at *1 (D.R.I. May 28, 2019) ("standard for dismissal of an action taken IFP is identical to" Rule 12(b)(6) standard for motion to dismiss) (citation omitted).  Moreover, in opposing defendants' Rule 12(b)(6) motion, plaintiff did not avail himself of the opportunity to address the argument.  Having provided adequate notice and an opportunity to be heard on the issue, a dismissal under section 1915(e)(2)(B)(ii) is appropriate.  See generally Brown v. Rhode Island, 511 F.App'x. 4, 5 (1st Cir. 2013) (per curiam) (unpublished).

In the alternative, "it is 'crystal clear that amending the complaint would be futile'" because the amended "complaint is 'patently meritless and beyond all hope of redemption.'"  Id. (quoting Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37

16

(1st Cir. 2001)).  The fact that plaintiff was enrolled in BHCC at the relevant time and that BCHH is an "educational institution" within the meaning of chapter 151C render the chapter 151C claims not only futile but also incurable.  Notice and an opportunity to be heard before dismissing this action under section 1915(e)(2)(B) is therefore not required.  See id.

## CONCLUSION

In accordance with the foregoing discussion, the motion to dismiss (Docket Entry # 34) is **ALLOWED** and defendants, i.e., BCHH and Professor Cutone in his official capacity, are dismissed.  The chapter 151C claims against Professor Cutone in his individual capacity are **DISMISSED** under section 1915(e)(2)(B).

                                        /s/ Marianne B. Bowler
                                        **MARIANNE B. BOWLER**
                                        United States Magistrate Judge